**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| I AM ATHLETE, LLC, a California limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No.: N24C-03-280 EMD CCLD |
| v. | ) ) ) | |
| IM ENMOTIVE, LLC, STEVEN GINSBURG, and ENMOTIVE COMPANY, LLC, | ) ) ) ) | |
| Defendants. | ) | |

Submitted: September 23, 2024
Decided: November 27, 2024

*Upon Consideration of Motion of Defendants to Dismiss Plaintiff's Amended Complaint*
***GRANTED in part and DENIED in part***

Jamie L. Brown, Esquire, Heyman Enerio Gattuso & Hirzel LLP, Wilmington, Delaware, Michael D. Adams, Esquire, and Lucas K. Hori, Esquire, Rutan & Tucker, LLP, Irvine California. *Attorneys for Plaintiff I Am Athlete.*

Gary W. Lipkin, Esquire, and Patrick A. Lockwood, Esquire, Saul Ewing LLP, Wilmington, Delaware, Martin B. Carroll, Esquire, David J. Ogles, Esquire, and Kenneth M. Thomas, Esquire, Fox Swibel Levin & Carroll LLP, Chicago, Illinois. *Attorneys for Defendants IM EnMotive Company LLC, Steven Ginsburg, and EnMotive Company, LLC.*

**DAVIS, J.**

## I. INTRODUCTION

This is a civil action assigned to the Complex Commercial Litigation Division of this Court. Plaintiff I Am Athlete, LLC ("Plaintiff") filed their Amended Complaint on March 27, 2024.[1] Plaintiff refiled (i.e., transferred) this civil action here after the suit was dismissed in the Court of Chancery on January 10, 2024, pursuant to a Magistrate's Final Report issued on

---

[1] Plaintiff I Am Athlete, LLC Verified Amended Complaint, D.I. 1 (hereafter "Compl.").

December 27, 2023 (the "Magistrate Report").[2]

Plaintiff alleges Defendants Im EnMotive, LLC ("EnMotive") and Steven Ginsburg, EnMotive's President and managing member at all relevant times, breached the Asset Purchase Agreement ("APA") through which EnMotive bought substantially all of Plaintiff's assets.[3] Specifically, Plaintiff claims EnMotive and Mr. Ginsburg improperly diverted the purchased assets to Defendant EnMotive Company, LLC ("EnMotive Successor" together with EnMotive "Defendants") causing Plaintiff to lose out on post-closing payments under the APA.[4] Plaintiff also asserts a tortious interference claim against EnMotive Successor.[5]

Before this Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint (the "Motion"), first filed July 28, 2023, with the Court of Chancery.[6] Defendants argue the Court lacks jurisdiction because the APA sets out a contractual dispute resolution procedure for handling Plaintiff's claims.[7] EnMotive argues Plaintiff has insufficiently pled facts supporting a breach of contract or breach of implied covenant claim.[8] Mr. Ginsburg argues that as a non-signatory of the APA, there is no basis for his liability after the Magistrate Report found Plaintiff's veil-piercing theory insufficiently pled.[9] EnMotive Successor argues the affiliate

---

[2] Chancery Court Adopting Order (hereafter "Ch. Order"); Special Magistrate Final Report Regarding Defendants' Motion to Dismiss, Transaction No. 7167032 (hereafter "Report") (dismissing the suit with leave to refile in Superior Court due to a lack of any cognizable equity claim.). Although originally filed in the Court of Chancery, the Motion to Dismiss is properly before this Court pursuant to a judicial ordered entered May 7, 2024. Stipulation and Order Governing Post-Transfer Procedure, D.I. 3 (hereafter "Super. Order"). The Court will not be referencing docket item numbers of those proceedings in the Court of Chancery. The parties lodged all relevant matters from the Court of Chancery pursuant to a Notice of Lodging filed in the Court. D.I. No. 4.

[3] Compl. ¶ 2, 10.

[4] Id. ¶ 19-22.

[5] Id. ¶ 34-39.

[6] Defendants' Motion to Dismiss Amended Complaint (hereafter "MTD").

[7] Defendant IM EnMotive, LLC's Opening Brief in Support of its Motion to Dismiss Amended Complaint (hereafter "EnMotive MTD Opening Br.") 17-23.

[8] Id. at 24-39.

[9] Defendants Steven Ginsburg and EnMotive Company LLC's Opening Brief in Support of their Motion to Dismiss Amended Complaint ("Ginsburg MTD Opening Br.") 4-5, 11-13.

privilege doctrine insulates them from liability.[10]  Plaintiffs oppose the Motion.

The Court heard argument on the Motion on September 23, 2024.  After argument, the Court granted the Motion with respect to Mr. Ginsburg.[11]  Accordingly, Mr. Ginsburg is no longer part of the case and is not discussed further.  The Court took the remainder of the Motion under advisement.

For the reasons stated below, the Court **GRANTS** in part and **DENIES** in part the Motion.

## II.        RELEVANT FACTS[12]

### A. The Parties

Plaintiff is a California limited liability company with its principal place of business in Los Angeles, California.  Prior to the APA, Plaintiff owned imATHLETE (the "Business").[13]  The Business is an enterprise which provides online registration software for athletic events.[14]

EnMotive is a Delaware limited liability company with its principal place of business in Buffalo Grove, Illinois.[15]  At the time of the APA, EnMotive provided services similar to those provided by the Business for events such as marathons.[16]

EnMotive Successor is a Delaware limited liability company with its principal place of business in Pittsford, New York.[17]  EnMotive Successor is wholly owned by non-party Gannett Co., Inc., a national media and marketing company.[18]

---

[10] *Id.* at 7-11.
[11] Superior Court Proceeding Sheet for Defendants' Motion to Dismiss, heard on September 23, 2024, D.I. 14 (hereafter "Proceeding Sept. 23").
[12] The following facts are derived from the allegations in the Complaint and the documents either incorporated therein or integral thereto.  The Court accepts these allegations as true solely for purposes of this motion.
[13] Compl. ¶ 1.
[14] *Id.*
[15] *Id.* ¶ 2.
[16] *Id.*
[17] *Id.* ¶ 4.
[18] *Id.*

## B. The Asset Purchase Agreement

In October 2019, Plaintiff entered the APA with EnMotive, by which EnMotive purchased substantially all of Plaintiff's assets.[19] Under the APA, EnMotive agreed to pay Plaintiff "(1) $770,000 at closing, and (2) two post-closing payments of $550,000 (due on January 31, 2022), and $380,000 (due on January 31, 2023), for a total of $1,700,000."[20] These post-closing payments were contingent on the Business meeting certain conditions and were subject to clawback based on a formula in APA Section 1.9(c) (the "Clawback Provision").[21] Additionally, EnMotive "agreed to pay Plaintiff post-closing earnouts based on revenues of the "Business through 2023."[22] The APA defines "Business" as imATHLETE's "business of developing and providing software for online registration for athletic events and Related Products."[23] The maximum possible aggregate earnout payment was $1,000,000.[24]

Because Plaintiff's ultimate compensation was heavily dependent on future performance, the APA defines the parties' post-closing rights and obligations regarding the Business's management.[25] APA Section 1.6 states:

> subsequent to the Closing, Buyer shall have sole discretion with regard to all matters relating to the operation of the Business; provided, however, that Buyer shall use commercially reasonable efforts to maximize the performance of the Business during the Measurement Period. Buyer agrees to provide Seller, within sixty (60) days after the close of each Measurement Year, a copy of the annual report of the Buyer, which annual report shall include consolidated balance sheets and statements of earnings and cash flows of the Buyer, certified to be true by a duly authorized officer of the Buyer.[26]

APA Section 1.9 deals with post-closing purchase price adjustments, including earnout

---

[19] *Id.* ¶ 10.
[20] *Id.* ¶ 11.
[21] APA § 1.9(c).
[22] *Id.*
[23] Compl. ¶ 12.
[24] APA §§ 1.5(b), 1.6.
[25] *Id.* § 1.6(e).
[26] *Id.*

4

payments and the Clawback Provision.[27]  APA Section 1.9(a) sets out the process by which EnMotive calculates any owed earnout payment and how Plaintiff can dispute that determination.[28] It reads in relevant part:

> Within sixty (60) days following the expiration of a Measurement Year, Buyer shall present to Seller its proposed determination of the Earn-out Payment, including its detailed calculation (and all data underlying such calculation) of the New Revenue for such Measurement Year . . . If Seller disagrees with any of Buyer's calculations set forth in the Earn-out Notice, Seller may deliver an Objection Notice and such dispute shall be governed pursuant to Section 1.9(c).[29]

APA Section 1.9(b) articulates the Clawback Provision and states:

> Beginning in calendar year 2020, and during each of the two successive twelve (12) month periods thereafter through December 31, 2021 (such total period, the "Clawback Period"), in the event that Net Revenue generated by the Business during any such twelve (12) month period is less than $1,620,000 (i.e. 90% of the Pre-Closing Revenue), then Buyer shall, within sixty (60) days following the expiration of each such calendar year, furnish a notice to Seller (a "Clawback Notice") indicating Buyer's election to claw back the Clawback Reduction Amount (as defined below) against Future Payments and/or Earn-out Payments.[30]

Finally, APA Section 1.9(c) governs the process by which Plaintiff can dispute EnMotive's proposed earnout or clawback and reads:

> Seller shall be entitled to dispute the proposed calculation of the Earn-out Payment and/or First Measurement Year Revenue (as such amounts shall be detailed in the Earn-out Notice) or the amount of any Clawback provided for in Section 1.9(b), if Seller delivers a written notice (an "Objection Notice") to Buyer within sixty (60) days after receipt of either (x) the Earn-out Notice or (y) the Clawback Notice objecting to a proposed calculation . . . . If no Objection Notice is delivered to Buyer within sixty (60) days after receipt of the Earn-out Notice and/or the Clawback Notice . . . the Earn-out Payment and/or Clawback shall be deemed to be conclusive and binding upon the Parties. . . . If Seller delivers an Objection Notice to Buyer within the time period specified above, Buyer and Seller shall attempt in good faith to agree upon the calculation of the Earn-out Payment and/or Clawback . . . . If Buyer and Seller do not agree in writing prior to the expiration of the Negotiation Period on the amount of the Earn-out Payment and/or the Clawback,

---

[27] *Id.* § 1.9.
[28] *Id.* § 1.9(a).
[29] *Id.*
[30] *Id.* § 1.9(b). The specifics of how the Clawback amount is calculated and applied is not relevant to this dispute and is therefore omitted.

5

the items in dispute (but no other matters) shall be submitted to an independent accounting firm of recognized regional or national standing (excluding Buyer's accounting firm) mutually agreed upon and jointly retained by Buyer and Seller (the "Final Arbiter"). The Final Arbiter shall make a final and binding determination as to all matters in dispute relating to the calculation of the Earn-out Payment and/or Clawback.[31]

The APA provides that disputes arising under the agreement are governed by Delaware law.[32] Moreover, any dispute "shall be instituted exclusively in any federal or state court located within New Castle, Delaware."[33]

## C. Events Preceding Litigation

For the first year following signing the APA, the parties' relationship appeared amicable. After the 2021 Business performance measurement period passed, EnMotive did not issue a clawback notice, though no milestone payments or earnout were due.[34] Plaintiff alleges the lack of notice led them to "believe[] it was on track to receive its post-closing consideration."[35] Yet, Plaintiff also claims that during this period EnMotive, "shuttered the Business. . . . include[ing] ceasing all efforts to generate business for the imATHLETE platform and instead devoting all efforts and resources to generating business for the EnMotive platform."[36] Concurrently, EnMotive generated around "$2,000,000" in revenue from events like "a virtual Turkey Trot" and a "Shamrock Run."[37] Plaintiff argues these events could have been made available to the Business.[38]

In January 2022, Plaintiff wrote EnMotive requesting the first post-closing

---

[31] *Id.* § 1.9(c)
[32] *Id.* 6.13
[33] *Id.* 7.13(a)
[34] Compl. ¶ 16.
[35] *Id.*
[36] *Id.* ¶ 14.
[37] *Id.*
[38] *Id.*

6

payment and any earnout due.[39]  On January 26, 2022, EnMotive replied stating it was invoking the Clawback Provision, because the Business had not hit the revenue targets specified in the APA.[40]  Accordingly, EnMotive maintained that it did not owe Plaintiff the post-closing payment and the earnout payment.[41]  Plaintiff did not send a notice pursuant to APA Section 1.9(c) disputing EnMotive's calculations.[42]  Rather, Plaintiff "promptly put EnMotive on notice of its breaches of [the] APA," and claimed the first post-closing payment was due.[43]

EnMotive entered into a second asset purchase agreement ("APA Two") with its affiliate, EnMotive Successor, in March 2022.[44]  Notwithstanding the March 2022 signing date, Plaintiff alleges EnMotive and EnMotive Successor were contemplating the transaction long before "including during the time when EnMotive had decided to shutter the Business."[45]  Under the terms of APA Two, EnMotive Successor would pay $1,700,000 in exchange for substantially all of EnMotive's assets, including the Business.[46]  APA Two "expressly noted Plaintiff had asserted claims" and held $1,000,000 of the purchase price in escrow "until the earlier of the resolution of those claims or the passage of one year without the filing of a claim."[47]

### D. Procedural History

Plaintiff originally filed suit in the Court of Chancery on March 17, 2023.[48]

---

[39] *Id.* ¶ 17.
[40] *Id.*
[41] *Id.*
[42] *Id.* ¶ 18.
[43] *Id.*
[44] *Id.* ¶ 19.
[45] *Id.*
[46] *Id.* ¶¶ 19, 21; APA 2 § 1.4.
[47] Compl. ¶ 21; APA 2 § 6.6.
[48] Compl. ¶ 21.

Defendants filed a motion to dismiss on May 19, 2023.[49]  Relying on the Magistrate Report, the Chancellor dismissed the case on January 10, 2024, based on a lack of any equity claim, with leave to refile in this Court.[50]

Plaintiff refiled the Amended Complaint in this Court on March 27, 2024.[51]  On May 7, 2024, the Court entered an order by which Defendants reasserted their previously filed motion to dismiss—i.e., the Motion—along with all previous briefing.[52]  The Court held a hearing on the Motion on September 23, 2024.  After oral argument the Court granted the Motion with respect to Mr. Ginsburg and took the remaining matters under advisement.[53]  The Court now **GRANTS** in part and **DENIES** in part Defendants' Motion.

### III.    PARTIES' CONTENTIONS

#### A.  The Motion

Defendants maintain that this Court lacks jurisdiction over Plaintiff's claim.  They contend Plaintiff asserts EnMotive's clawback and earnout calculations were incorrect and the dispute should be handled by an independent accountant pursuant to APA Section 1.9(c).  Defendants claim calculating any damages requires determining the Business's "but-for" revenue which is within the expertise of the APA mandated accountant.

EnMotive contends that even if the Court does have jurisdiction, Plaintiff's breach of contract claim is inadequately pled with respect to damages.  Specifically, EnMotive argues the Complaint does not allege that the Business would have had sufficient revenue

---

[49] MTD.
[50] Report; Ch. Order.
[51] Compl.
[52] Super. Order.
[53] Proceeding Sept. 23.

to trigger any post-closing payments absent Defendants alleged wrongful acts. EnMotive also asserts Plaintiff's breach of the implied covenant of good faith and fair dealing fails to state a claim because Plaintiff has not identified any contractual gap where the covenant operates. Additionally, they claim Plaintiff's implied covenant claim is duplicative with their breach of contract claim.

EnMotive Successor argues the Amended Complaint does not adequately allege they committed an intentional act that was a significant factor in EnMotive's alleged breach. Additionally, EnMotive Successor contends they are shielded from tortious interference liability under the affiliate privilege doctrine.

## B. The Opposition

Plaintiff contends this matter is properly before the Court. They argue APA Section 1.9(c) only applies to disputes about the calculation of the clawback or earnout. Plaintiff states they are not disputing these calculations, but rather claiming they are fundamentally flawed because of Defendants' wrongful acts.

Plaintiff argues its breach of contract claims against EnMotive are distinct and well-pled, while any dispute as to the method of calculating damages is premature. Plaintiff asserts EnMotive Successor's purchase of the Business with knowledge of EnMotive's contractual obligations is a sufficient allegation of an act causing breach. Additionally, Plaintiff contends they have alleged bad faith by EnMotive Successor such that the affiliate privilege does not apply.

## IV. STANDARD OF REVIEW

Under Civil Rule 12(b)(1), the Court will "dismiss an action for lack of subject matter jurisdiction if it appears from the record that the Court does not have jurisdiction over the

9

claim."[54]  The burden of establishing subject matter jurisdiction lies with "the party seeking the Court's intervention."[55]  If a claim is subject to a valid contractual dispute resolution clause, the Court will dismiss for lack of jurisdiction.[56]

On a Civil Rule 12(b)(6) Motion to Dismiss, the Court "accepts all factual allegations in the complaint [as true] and will deny the motion unless the plaintiff could not recover under any conceivable circumstances."[57]  Additionally, the Court draws all reasonable inferences in favor of the non-moving party.[58]  Even a vague allegation is "well pleaded if they give the opposing party notice of the claim."[59]  While the Court accepts well-pleaded allegations as true, "it will also ignore conclusory allegations that lack specific supporting factual allegations."[60]  The Court will dismiss a claim merely reciting the elements, without alleging facts satisfying them.[61]

## V.      DISCUSSION

### A. APA Section 1.9(c) Does Not Govern Plaintiff's Claim, which is Properly before the Court.

Defendants first ask the Court to dismiss Plaintiffs' claims under Civil Rule 12(b)(1).  Defendants argue that the APA requires Plaintiff to submit its claims to the independent accountant as specified in APA Section 1.9(c).  Delaware courts are familiar with the substance of Defendants' argument.  While Delaware courts "lack jurisdiction to resolve disputes that litigants have contractually agreed to arbitrate," this only controls if Plaintiff's claim falls within APA Section 1.9(c)'s plain language.[62]

---

[54] *Airbase Carpet Mart, Inc. v. AYA Assocs., Inc.*, 2015 WL 9302894, at *2 (Del. Super. Ct. Dec. 15, 2015).
[55] *Id.*
[56] *Id.* at *3.
[57] *Vito v. Waterslide Prop. Owners Assoc., Inc.*, 2022 WL 4372755, at *2 (Del. Super. Ct. Sept. 21, 2022) (quotations omitted).
[58] *Savor, Inc. v. FMR Corp.*,812 A.2d 894, 896-97 (Del. Super. Ct. 2002).
[59] *Id.*
[60] *Vito*, 2022 WL 4372755, at *2. (cleaned up).
[61] *Ki-Poong Lee v. So*, 2016 WL 6806247, at *5 (Del. Super. Ct. Nov. 17, 2016).
[62] *SBC Interactive, Inc. v. Corporate Media Partners*, 714 A.2d 758, 761 (Del. 1998).

Civil Rule 12(b)(1) claims related to independent accountant provisions governing post-closing payout disputes are increasingly common.[63] While each case presents different contractual language and facts, the resolution of such claims depends on answering two questions.

First, is the contractual dispute resolution mechanism at issue an "arbitration" or "expert determination."[64] Expert determinations are fundamentally different from arbitrations; "[t]he former limit the scope of the third-party decision maker's authority to factual disputes within the decision maker's expertise. The latter typically confers upon the third-party decision maker broad authority similar to that of judicial officers."[65] Contractual terminology is persuasive, not conclusive, evidence of if a provision calls for an expert or an arbitrator.[66]

Beyond the parties' nomenclature, courts consider several factors when classifying a third-party dispute resolver as an expert or arbitrator.[67] Key factors suggesting a clause calls for an expert determination include: (1) if the third-party's authority is limited to issued covered by their "specialized knowledge;"[68] (2) if the contractual clause at issue does not "include procedural rules . . . viewed as a defining characteristic of arbitration provisions;"[69] and (3) if the dispute resolution mechanism is "only triggered when the parties teed up a narrow, technical question."[70] Addressing a similar issue, the Court of Chancery stated "[a]rbitration of legal issues arising in post-

[63] *E.g.*, *Dolce v. WTS International, LLC*, 2024 WL 714128 (Del. Ch. Feb. 20, 2024); *see Penton Business Media Holdings, LLC v. Informa PLC*, 252 A.3d 445, 454-66 (Del. Ch. 2018) (collecting cases).
[64] *Ray Beyond Corp. v. Trimaran Fund Management, L.L.C.*, 2019 WL 366614, at *1 (Del. Ch. Jan. 29, 2019).
[65] *Id.*
[66] *Id.* at *7-8.
[67] *Id.*
[68] *Sapp v. Indus. Action Servs., LLC*, 75 F.4th 205, 2011 (3d Cir. 2023) (applying Delaware law).
[69] *Ray Beyond*, 2019 WL 366614, at *7.
[70] *AQSR India Private, Ltd. V. Bureau Veritas Holdings, Inc.*, 2009 WL 1707910, at *2 (Del. Ch. June 16, 2009).

closing price disputes is typically conducted by legal professionals," such that the use of an accountant suggested a provision was an expert determination.[71]

Here, APA Section 1.9(c) classifies the independent accountant as a "Final Arbiter" that makes "a final and binding determination as to all matters in dispute relating to the *calculation* of the Earn-out Payment and/or Clawback."[72] This "Final Arbiter" language is *prima facia* evidence APA Section 1.9(c) is an arbitration provision. Yet here, that initial evidence is rebutted by the other factors the Court considers in classifying a clause as an expert determination or an arbitration provision. The independent accountant is only called upon after the parties have gone through a series of procedures to resolve specific disputes about the calculation of the proper clawback or earnout amount.[73]

The APA does not contemplate an accountant resolving all disputes the parties may have, rather the accountant is to determine narrow factual questions within the accountant's area of expertise. Additionally, APA Section 1.9(c) does not lay out any of the procedural rules typical of an arbitration provision, such as the right for each party to present their case to the accountant.[74] Despite calling the accountant the Final Arbiter, the Court finds APA Section 1.9(c)'s dispute resolution mechanism is an expert determination and not an arbitration provision governing all disputes under the APA.

Having determined APA Section 1.9(c) calls for an expert determination, the second question is whether Plaintiff's claims fall within "the sort of fact-intensive and technical questions [within] . . . the expertise of an accounting expert, and the parties

---

[71] *Ray Beyond*, 2019 WL 366614, at *8.
[72] APA § 1.9(c)(emphasis added).
[73] *Id.*
[74] *Id.*

12

agreed to delegate."[75] The answer is no. Plaintiff does not argue EnMotive

miscalculated the earnout or clawback amount based on the Business's 2021 revenue.

Plaintiff "claim[s] that EnMotive improperly shuttered the Business and then sold away

its assets, which breaches its obligations to use commercially reasonable efforts to

maximize the performance of the Business."[76] Thus, Plaintiff's claims are not regarding

calculation, but "contract interpretation."[77] Accordingly, Plaintiff's claims fall outside

the narrow area of disputes delegated to the expert independent accountant and this Court

has jurisdiction. Defendants' argument that any damages are predicated on calculating a

"but-for" earnout and clawback does not change this result.[78]

At this stage it is sufficient for Plaintiff to plead their claims fall outside the

dispute resolution provision of the Agreement.[79] The Motion, as to Civil Rule 12(b)(1) is

**DENIED**.

### B. Plaintiff States a Claim for Breach of Contract, but Not Breach of Implied Covenant, Against EnMotive.

Defendant EnMotive asks the Court to dismiss Counts I and II under Rule 12(b)(6) for

failure to state a claim.[80] Count I contends that EnMotive breached APA Section 1.6.[81] Count II

maintains that EnMotive breached the implied covenant of good faith and fair dealing.[82] The

Court addresses each in turn.

---

[75] *Dolce v. WTS International, LLC*, 2024 WL 714128, at *3 (Del. Ch. Feb. 20, 2024).

[76] Plaintiff's Answering Brief in Opposition to Defendant EnMotive's Motion to Dismiss, Transaction No. 70976640 (hereafter "Pl. Opp'n EnMotive MTD) at 15.

[77] *Fortis Advisors, LLC v. Dematic Corp.*, 2022 WL 18359410, at *16 (Del. Super. Ct. Dec. 29, 2022).

[78] *See Firefighters Pension Sys. V. Presidio, Inc.*, 251 A.3d 212, 280 (Del. Ch. 2021) (holding at the pleading stage plaintiff does not have to specify a monetary amount of or specific method for calculating damages).

[79] *Dematic Corp*, 2022 WL 18359410, at *16.

[80] EnMotive MTD Opening Br. at 24-39.

[81] Compl. at ¶¶ 26-29.

[82] *Id.* at ¶¶ 31-33.

**1. Plaintiff's Complaint States a Claim for Breach of Contract Against EnMotive.**

To state a claim for breach of contract, Plaintiff must plead, "(1) the existence of a contractual obligation; (2) a breach of that obligation; and (3) damages resulting from the breach."[83] Here, there is no dispute the APA is a contractual obligation binding both Plaintiff and EnMotive.[84] Furthermore, there is no genuine dispute Plaintiff has pled facts which, if true, show EnMotive breached the APA.[85] Accordingly, Plaintiff's ability to proceed with their claim hinges on the sufficiency of their damage pleadings.

Civil Rule 12(b)(6) does not require "a statement of damages with precision," the Amended Complaint need only give the Defendants "notice" of damages.[86] To survive a motion to dismiss "the non-movant need only present some credible evidence that supports a claim for damages."[87] That "damages will be difficult to prove at trial" does not alter this result.[88] Rather, so long as Plaintiff sufficiently pleads facts which, if true, show the "existence" of damages, arguments as to the "amount" of damages do not justify granting a dismissal.[89]

Here, Plaintiff has sufficiently pled facts showing the existence of damages arising from EnMotive's alleged breach. The Amended Complaint asserts that, with knowledge of the contractual obligations under APA Section 1.6, EnMotive diverted Business assets to its own company causing the Business to miss out on revenue.[90] Plaintiff provides specific examples of events put on by EnMotive which could have generated revenue for the Business had it not been

---

[83] *Active Day OH, Inc. v. Wehr*, 2024 WL 3201167, at *3 (Del. Super. Ct. June 27, 2024) (citations omitted).
[84] EnMotive MTD Opening Br. at 1; Compl. at ¶10.
[85] EnMotive MTD Opening Br. at 2-3.
[86] *Eni Holdings, LLC v. KBR Group Holdings, LLC*, 2013 WL 618626, at *22 (Del. Ch. Nov. 27, 2013).
[87] *Medlink Health Solutions, LLC v. JL Kaya, Inc.*, 2024 WL 1192781, at *5 (Del. Super. Ct. Mar. 20, 2024).
[88] *Torrent Pharma, Inc. v. Priority Healthcare Distribution, Inc.*, 2022 WL 3272421, at *13 (Del. Super. Ct. Aug. 11, 2022).
[89] *Medlink*, 2024 WL 1192781, at *5.
[90] Compl. at ¶¶ 19-20.

shuttered.[91]  Moreover, the Business had previously run these types of events.[92]

Additionally, Plaintiff alleges EnMotive sold the Business's assets to EnMotive Successor making it impossible for the Business to hit the revenue targets needed to trigger post-closing payments.[93]  This action resulted in the Business missing 2021 earnings targets and EnMotive not owing Plaintiff any post-closing payment.[94]  The Court finds that a fair inference from these allegations is that EnMotive's allegedly breaching actions caused revenue to drop such that the Business missed the 2021 targets.  Accordingly, Plaintiff has met its pleading obligation by giving Defendants adequate notice of the existence of damages.

EnMotive challenges this conclusion through two lines of argument.  First, they refashion the Civil Rule 12(b)(1) argument that adherence to APA Section 1.9(c)'s dispute resolution mechanism is a condition to recovery for any breach of contract claim.[95]  For the reasons already stated, this dispute does not fall within the scope of APA Section 1.9(c).

Second, EnMotive asserts the Amended Complaint does not contain any allegations about what 2021 revenue would have been but-for EnMotive's allegedly breaching actions.[96]  The Court notes that this is true; however, this assertion goes to the amount of damages owed by EnMotive, not the existence of damages.  Additionally, whether 2021 revenue would have been high enough to trigger post-closing payments had EnMotive run the Business according to Plaintiff's wishes is a factual issue not suited for a Motion to Dismiss.  As such, because Plaintiff sufficiently pled the existence of damages arising out of EnMotive's alleged breach, the Motion as to Count I is **DENIED**.

---

[91] *Id.* at ¶14.
[92] *Id.*
[93] *Id.* at ¶¶19-20, 36-37.
[94] *Id.* at ¶¶ 15, 17.
[95] EnMotive MTD Opening Br. at 25-26.
[96] *Id.* at 32-35.

## 2. Plaintiff Fails to Identify a Contractual Gap such that the Covenant of Good Faith and Fair Dealing Applies.

EnMotive also asks the Court to dismiss Plaintiff's breach of the covenant of good faith and fair dealing for failure to state a claim.[97] The covenant of good faith and fair dealing is a gap-filling mechanism to handle issues "neither party anticipated."[98] While the implied covenant "is inherent in all contracts," its role is limited to ensure the parties do not "frustrat[e] the fruits of the bargain."[99] The covenant does not allow for judicial rewriting of contracts, "[p]arties have a right to enter into good and bad contracts, the law enforces both."[100] Accordingly, "[i]t does not apply when the contract addresses the conduct at issue."[101] For a party to claim the covenant has been breached, they must identify some contractual gap such that the covenant applies.[102] Additionally, an implied covenant claim fails if it is duplicative.[103]

Plaintiff asserts EnMotive breached the implied covenant by entering into APA Two and selling the Business to EnMotive Successor.[104] As evidence of a contractual gap allowing the covenant to apply, Plaintiff notes the APA has no provision related to EnMotive's power to dispose of the Business's assets during the measurement period.[105] Plaintiff claims there is a gap in which the implied covenant can operate because the APA is silent about EnMotive's ability to sell but still imposes an obligation to use "best efforts."[106]

The Court finds that Plaintiff has not demonstrated that the APA contains a gap in its

---

[97] *Id.* at 26, 31-32.

[98] *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010).

[99] *Baldwin v. New Wood Res. LLC*, 283 A.3d 1009, 1116 (Del. 2022).

[100] *Nemec*, 991 A.2d at 1126.

[101] *Nationalwide Emerging Managers, LLC v. Northpointe Holdings*, LLC, 112 A.3d 878, 896 (Del. 2015).

[102] *Miller v. HCP & Co.*, 2018 WL 656378, at *2 (Del. Ch. 2018), *aff'd sub nom.*, *Miller v. HPC Trumpet Invs., LLC*, 194 A.3d 908 (Del. 2018).

[103] *Reardon v. CANarchy Holdco Corp.*, 2021 WL 2287468, at *3 (Del. Super. Ct. June 4, 2021).

[104] Compl. at ¶¶ 26-29, 31-33.

[105] Pl. Opp'n EnMotive MTD at 27-30.

[106] *Id.* at 32-33, 38.

provisions such that the implied covenant applies. APA Section 1.6 broadly granted EnMotive "sole discretion with regard to all matters relating to the operation of the Business," subject only to the "commercially reasonable efforts" to maximize performance restriction.[107] Other portions of the APA, all related to Plaintiff's post-signing obligations, specifically limit a party's ability to dispose of Business assets.[108] The inclusions of these sections demonstrates the parties knew how to bargain for and memorialize a no-sale clause. Accordingly, the Court will not use the implied covenant of good faith and fair dealing to rewrite the APA and impose an alienation restraint where the most likely reason it is absent is because the parties did not agree to one. Therefore, Plaintiff has not sufficiently plead the APA contains a gap in its language such that the implied covenant applies.

Additionally, Plaintiff's implied covenant claim fails because it is duplicative. Plaintiff's argument that the sale of Business assets under APA Two caused the Business to miss the 2021 target and Plaintiff to lose post-closing payouts, is identical to their breach of contract claim.[109] Because the implied covenant claim adds nothing new, it is duplicative, and dismissal is warranted.[110] Plaintiff may still argue EnMotive's sale of Business assets and alleged shuttering the Business breached the APA's express terms just not as an implied covenant. For these reasons, the Motion, as to Court II, is **GRANTED**.

### C. Plaintiff States a Claim for Tortious Interference with Contract Against EnMotive Successor.

EnMotive Successor asks the Court to dismiss Plaintiff's tortious interference with contract claim under Civil Rule 12(b)(6) for failure to state a claim.[111] Tortious interference with

---

[107] APA § 1.6
[108] EnMotive MTD Opening Br. at 30-31 (citing APA §§ 6.1; 4.9; 4.7; 4.6).
[109] Compl. at ¶¶ 31-33.
[110] *Reardon*, 2021 WL 2287468, at *3.
[111] Ginsburg MTD Opening Br. at 7-11.

contract requires "(1) a valid contract, (2) about which the defendants have knowledge, (3) an intentional act by defendants that is a significant factor in causing the breach of contract, (4) done without justification, and (5) which causes injury."[112] Only prongs three and four are seriously disputed.[113]

### 1. Plaintiff Sufficiently Pleads EnMotive Successor was a Significant Factor in EnMotive's Alleged Breach of the APA.

EnMotive Successor advances two main arguments asserting its actions were not a "significant factor[] in causing" any breach by EnMotive.[114] First, they contend that because APA Two "was signed *after*" EnMotive's alleged breaches, EnMotive Successor "could not have caused them."[115] Second, EnMotive Successor argues the Amended Complaint insufficiently alleges facts to meet the significant factor standard.[116]

Plaintiff responds by contending the fact EnMotive and EnMotive Successor entered into APA Two after EnMotive's alleged breach does not preclude liability as a matter of law.[117] The Court has denied pre-trial dispositive motions where, despite the fact a contract was entered into after an alleged breach, it was contemplated by the parties before the breach.[118] Here, the Amended Complaint alleges EnMotive and EnMotive Successor contemplated the transaction before any breach.[119] Additionally, the Amended Complaint asserts that EnMotive Successor "was formed for the improper purpose of shedding certain liabilities to Plaintiff."[120] These

---

[112] *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1182 (Del. Ch. 1999).
[113] Ginsburg MTD Opening Br. at 7-11.
[114] *Id.* at 8.
[115] *Id.* (emphasis in original).
[116] *Id.*
[117] Plaintiff's Answering Brief in Opposition to Defendants Steven Ginsburg and EnMotive Company LLC's Motion to Dismiss, Transaction No. 70993330 (hereafter "Pl. Opp'n Ginsburg MTD") at 1-2.
[118] *See Patterson-Woods & Associates, LLC v. Realty Enterprises, LLC*, 2008 WL 2231511, at *8-9, 15 (Del. Super. Ct. May 21, 2008).
[119] Compl. ¶ 4.
[120] *Id.*

18

allegations sufficiently plead EnMotive Successor was involved before EnMotive's alleged breach. Thus, the fact APA Two was executed after the alleged breaches does not preclude a tortious interference claim.

Plaintiff responds to EnMotive Successor's second argument by noting the third tortious interference element only "requires the act by the defendant to be a significant factor in causing the breach not the sole factor."[121] Plaintiff need only "plead facts supporting an inference that the defendant took an intentional act that was a significant factor in causing the breach of contract."[122] Plaintiff contends the allegations in the Amended Complaint refuting EnMotive Successor's timing argument also apply here.[123] Additionally, Plaintiff argues the Amended Complaint supports an inference EnMotive Successor "knowingly took from EnMotive the very assets that EnMotive required to 'use commercially reasonable efforts to maximize the performance of the Business.'"[124]

The resolution of this disagreement is a close call. Both parties' arguments have merit. EnMotive Successor correctly notes the Amended Complaint is sparsely pled regarding the causal link between their actions and EnMotive's breach. At this stage in the proceedings, the Court finds that Plaintiff has successfully alleged this element. Plaintiff alleges "EnMotive Successor was formed for the improper purpose of shedding certain liability to Plaintiff . . . while maintaining the benefits of the purchased assets,"[125] and "the intended effect of this transaction was to try to erase the liabilities owed to Plaintiff under APA No. 1 . . . while undermining Plaintiff's ability to receive post-closing payments and earn-outs."[126] Taken together, and

[121] *Patterson-Woods*, 2008 WL 2231511, at *15.
[122] *Harris v. Harris*, 289 A.3d 277, 309 (Del. Ch. 2023).
[123] Pl. Opp'n Ginsburg MTD at 27-28.
[124] *Id.* at 28-30 (quoting APA § 1.6(e)).
[125] Compl. ¶ 4.
[126] *Id.* ¶ 20.

drawing all reasonable inferences in Plaintiff's favor, the Court finds these allegations meet the burden of stating EnMotive Successor's actions were a significant cause of EnMotive's breach.

## 2. Plaintiff Sufficiently Pleads EnMotive Successor's Alleged Wrongful Acts were Without Justification.

The affiliate privilege "immunizes a controller from tort liability for its affiliates' contractual breaches," on the theory that affiliated entities should be allowed to pursue joint profit maximization even if it disadvantages a specific subsidiary.[127] This privilege is not absolute and "will not protect a controller that induces its affiliates' breaches in bad faith."[128] Where a plaintiff seeks to hold a controlling corporation liable for interference with a contract to which the controller is not a party, allegations of bad faith are critical.[129] Specifically, the complaint must contain "alleged facts to rebut the presumption" the controller was "pursuing its legitimate profit seeking in good faith."[130] Restated, a plaintiff must allege the controller's "sole-motive" was "bad faith to injure plaintiff."[131] Delaware courts have consistently held "[t]he bad faith standard is stringent and will not be found where a parent was merely advising or causing the subsidiary to engage in an efficient breach of the contract."[132] Where a complaint lacks bad faith allegations motions to dismiss are routinely granted.[133]

EnMotive Successor claims they are precluded from liability because the affiliate privilege prevents concluding their actions were done without justification.[134] EnMotive

---

[127] *Surf's Up Legacy Partners, LLC V. Virgin Fest, LLC*, 2021 WL 117036, *1 (Del. Super. Ct. Jan. 13, 2021).
[128] *Id.*
[129] *Id.* at *7.
[130] *Id.*
[131] *Id.*
[132] *PPL Corporation*, 2019 WL 5423306, at *13.
[133] *See Nivagen Pharm., Inc. v. Hikma Pharm. USA Inc.*, 2024 WL 1576519, at *3 (Del. Super. Ct. Apr. 11, 2024) (granting a motion to dismiss because "Not one fact in the Complaint relates to a reason why Hikma PLC would be motivated to injure Nivagen or otherwise act against Hikma USA's pecuniary interest."); *James Cable, LLC v. Millennium Digital Media Systems, L.L.C.*, 2009 WL 1638634, at *5 (Del. Ch. June 11, 2009) (granting a motion to dismiss because the complaint "does not sufficiently allege any purpose behind Highland's actions outside of an economic interest it shared with Broadstripe.").
[134] Ginsburg MTD Opening Br. at 32-37.

Successor asserts "the Amended Complaint never pleads *any* facts that would produce an inference that EnMotive Successor acted in bad faith or maliciously."[135] Additionally, EnMotive Successor points out that $1,000,000 of APA Two's purchase price was held in escrow to cover "potential liability to Plaintiff," demonstrating the good-faith nature of APA Two.[136] Plaintiff cites to several allegations in the Amended Complaint that Plaintiff maintains plead EnMotive Successor entered APA Two in bad faith.[137]

The Court notes that the Amended Complaint's allegations relied upon by Plaintiff allege bad faith on the part of EnMotive Successor. Whether these allegations sufficiently allege EnMotive Successor entered APA Two "solely" to injury Plaintiff is a closer issue. That a substantial portion of the purchase price paid by EnMotive Successor was held in escrow to resolve Plaintiff's claims suggests good faith. Conversely, the Amended Complaint states that, through APA Two, EnMotive Successor "assum[ed] certain liabilities" of EnMotive while explicitly disclaiming any obligations owed to Plaintiff.[138] Furthermore, the $1,000,000 held in escrow may narrowly cover the milestone payments established by the APA, with little left to cover any owed earnout payment.[139] The Court can infer, as it must on a motion to dismiss, that these allegations suggest a bad faith effort by EnMotive Successor to obtain the benefits of the Business while relegating any liability to Plaintiff to a thinly funded escrow account. The Court

---

[135] *Id.* at 10.

[136] *Id.*

[137] Specifically, Plaintiff invokes the Amended Complaint's language that "EnMotive Successor was formed for the improper purpose of shedding certain liability to Plaintiff . . . while maintaining the benefits of the purchased assets," (Compl. ¶ 4); "EnMotive Successor and EnMotive had been contemplating this transaction [APA 2] before March 2022, including during the time when EnMotive decided to shutter the Business," (*Id.* at ¶ 19); "the intended effect of this transaction was to try to erase the liabilities owed to Plaintiff under APA No. 1, so that EnMotive Successor could obtain EnMotive's assets (including the Business) at a bargain, while undermining Plaintiff's ability to receive post-closing payments and earn-outs," (*Id.* at ¶ 20); and "APA No. 2 expressly purported to carve out from EnMotive Successor's purchase any liability EnMotive incurred in connection with APA No. 1," (*Id.* at ¶ 21).

[138] Compl. ¶ 21 (citing APA 2 § 1.4).

[139] *Id.* ¶ 21.

concludes allegations in the Amended Complaint,[140] taken together, give rise to a reasonable inference EnMotive Successor entered APA Two with the primary purpose of causing EnMotive's breach in bad faith. Accordingly, Plaintiff has met their burden in rebutting EnMotive Successor's affiliate privilege argument at the pleading stage. The Motion, as to Count III, is **DENIED**.

## VI.    CONCLUSION

For the foregoing reasons, the Motion is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

November 27, 2024
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:    File&ServeXpress

---

[140] *Supra* n. 137.